**Nicholas CRIVELLI and Nick Crivelli Chevrolet, Inc. Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

No. CIV. A. 94–1453.

United States District Court, W.D. Pennsylvania.

Jan. 20, 1999.

J. Alan Johnson, Diane W. Perer, Samuel J. Orr, III, for Plaintiffs.

James A. Mollica, Michele Smith, Charles Brown, for Defendant.

## OPINION

ZIEGLER, Chief Judge.

### I. STATEMENT OF FACTS

Pending before the court is the motion of defendant, General Motors Corporation (hereafter General Motors or GM), for judgment as a matter of law, a new trial, or remittitur. The motion will be denied for the reasons that follow.

In this diversity action in which Pennsylvania law is controlling, the jury found that General Motors violated the Pennsylvania Board of Vehicles Act by unreasonably withholding consent to the sale of an automobile dealership, and intentionally interfered with a buy-sell agreement between Paul Scheidmantel and plaintiffs. The jury awarded plaintiffs the sum of $3.5 million in money damages.

Viewing the evidence in the light most favorable to the verdict winner, as we must, the evidence established the following. In 1991, Paul Scheidmantel decided to sell an Oldsmobile–Cadillac automobile dealership in Beaver falls, Pennsylvania, due to financial problems. Scheidmantel executed a buy-sell agreement with Floyd McElwain. The agreement contemplated that the dealership would remain in Beaver Falls and operate as a combined Oldsmobile–Cadillac dealership.

The agreement was submitted to the zone office of Oldsmobile for approval, and the zone office recommended approval to corporate headquarters in Michigan. The "Dealer Sales and Service Agreement" between General Motors and its dealers requires a dealer, such as Scheidmantel, to submit a change of ownership agreement to General Motors for approval. *See,* Art. 12.2–12.2.6. The Dealer Sales and Service Agreement also provides that:

> If Dealer submits a proposal for a change of ownership under Article 12.2., Division will have right of first refusal to purchase the dealership assets regardless of whether the proposed buyer is qualified to be a dealer....

Art 12.3. While approval of the buy-sell agreement was pending at corporate headquarters, McElwain rescinded the agreement due to concern that Scheidmantel could not satisfy his creditors at the time of closing.

In June 1991, Nicholas Crivelli approached Scheidmantel with respect to the dealership. However, preliminary discussions never matured due to Scheidmantel's negotiations with McElwain which ultimately led to a buy-sell agreement. When McElwain rescinded the agreement, Scheidmantel agreed to sell the dealership to Crivelli and the parties executed a buy-sell agreement on November 20, 1991.

The agreement provided that the dealership would remain a combined Olds–Cadillac franchise but would be moved seven miles to Vanport, Pennsylvania, where Crivelli operated a Chevrolet dealership. Crivelli had been a successful GM dealer at various locations including Vanport for over 20 years.

The Scheidmantel–Crivelli buy-sell agreement was submitted to the Oldsmobile zone office, and the zone office recommended to headquarters that the sale should be rejected because Crivelli planned to move the dealership from Beaver Falls. According to the zone office, rejection could be accomplished by exercising GM's right of first refusal as provided by Article 12.3 of the Dealer Sales and Service Agreement.

Before notifying Crivelli of any decision, the Oldsmobile zone office approached McElwain in an attempt to convince him to buy the dealership and keep it in Beaver Falls. The zone office also provided McElwain with a copy of the Scheidmantel–Crivelli buy-sell agreement, and thus McElwain knew the price that Crivelli was willing to pay, as well as the other terms and conditions of the agreement. McElwain was told that, if he agreed to buy the

dealership, GM would exercise its right of first refusal and assign the franchise to McElwain. McElwain and Oldsmobile then executed an assignment and assumption agreement "if Oldsmobile and Cadillac exercise their right of first refusal."

Without knowledge of these facts, Crivelli executed a second agreement with Scheidmantel and notified GM that, after further investigation and study, he was willing to maintain and operate the dealership in Beaver Falls. The notice was mailed to GM on January 31, 1992. On February 6, 1992, General Motors notified Scheidmantel and Crivelli that the company was exercising its right of first refusal, and would permit McElwain to assume GM's right and duties.

The debacle was further compounded by the response of the creditors. After waiting months without payment, the creditors forced Scheidmantel Oldsmobile–Cadillac, Inc. into bankruptcy on March 20, 1992. The Bankruptcy Court conducted a hearing on the debtor's emergency motion for approval of the sale to McElwain on April 23, 1992. Crivelli submitted a bid to purchase the Cadillac franchise alone because he believed that Oldsmobile would reject him as a dealer based upon the prior dealings between the parties. Leroy Friend bid for the Oldsmobile franchise. Their combined bids exceeded the bid of Floyd McElwain. The Bankruptcy Court approved the sale of the dealership to McElwain based upon the representation to the court that General Motors preferred McElwain as a dealer.

## II. JUDGMENT NOV

General Motors contends that we must enter judgment under Fed.R.Civ.P. 50(b) because, as a matter of law, the company did not violate Section 9(b)(3) of the Board of Vehicles Act, and did not intentionally and improperly interfere with the buy-sell agreement between Scheidmantel and plaintiffs.

Section 9(b)(3) of the Act provides that it is a violation of Pennsylvania law for any manufacturer to:

Unreasonably withhold consent to the sale, transfer or exchange of the franchise to a qualified buyer capable of being licensed as a new vehicle dealer in this Commonwealth.

63 P.S. § 818.9. GM concedes that Nicholas Crivelli is a "qualified buyer capable of being licensed," but urges that judgment must be entered because General Motors had a pre-existing contractual right to refuse to approve the sale to plaintiffs based on Articles 12.2–12.3 of the Dealer Sales and Service Agreement, and the decision to reject plaintiffs and exercise its right of first refusal was not unreasonably withheld consent, as a matter of law. Further, GM's decision to exercise a pre-existing contractual right was "proper, privileged and not actionable." Motion of General Motors at ¶ 2(c).

■ We begin by noting that there is no merit to GM's contention that plaintiffs lack standing. Motion of General Motors at ¶ 2(g). As we concluded in denying summary judgment and we repeat here, the Court of Appeals has specifically rejected the contention that the Pennsylvania Board of Vehicles Act does not reach prospective purchasers and franchisees such as plaintiffs. See, Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1383–1384 (3d Cir.1992), cert. denied, 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

■ We also believe that there is sufficient credible evidence of record to support the findings of the jury in answer to the special interrogatories. There is no dispute that Nicholas Crivelli was a qualified buyer because he has operated several successful GM dealerships in Western Pennsylvania. There is also ample evidence that plaintiffs are capable of being licensed in Pennsylvania because they have been licensed for over 20 years. The record is also clear that Nicholas Crivelli modified his original agreement to move

the franchise to Vanport and that he notified Oldsmobile's zone office and corporate headquarters of the change on January 31, 1992. Thus, prior to the time that GM exercised its contractual right of first refusal, plaintiffs had satisfied all conditions that General Motors required of a prospective purchaser. Despite these facts and without notice to plaintiffs, representatives of defendant pursued another purchaser (McElwain), who had no buy-sell agreement with Scheidmantel and who had rescinded a prior agreement with the owner, and used the Crivelli buy-sell agreement in that effort.

Based on the evidence of record, the jury could find that, in exercising its contractual rights, GM unreasonably withheld its consent to the sale or transfer to the only qualified buyer at that time, or a buyer who was at least more qualified than Floyd McElwain.

█ There is no merit to GM's argument that the contractual right of the Dealer Sales and Service Agreement trumps the statutory mandate that a manufacturer cannot unreasonably withhold its consent to a qualified buyer. The Court of Appeals has held that a fact finder must resolve the question whether General Motors acted unreasonably and in bad faith in violation of the New Jersey Franchise Act when it rejected a purchaser's application to become a dealer. *In Re Headquarters Dodge, Inc.*, 13 F.3d 674 (3d Cir.1993). There, as here, General Motors possessed a contractual right of first refusal.

And in *Big Apple BMW, Inc. v. BMW of North America, Inc., supra*, the Court of Appeals reversed the grant of summary judgment for an automobile manufacturer in an action filed by prospective purchasers of dealerships alleging that BMW had violated the Sherman Act, the Pennsylvania Board of Vehicles Act, and interfered with contracts between dealers and prospective purchasers. Based on the teachings of the Court of Appeals and the evidence of record, we conclude that there is sufficient evidence of record to support the findings of the jury that General Motors

violated the Pennsylvania Board of Vehicles Act, and intentionally and improperly interfered with the buy-sell agreement between Scheidmantel and plaintiffs by failing to "comport with the rules of the game which society has adopted." 974 F.2d at 1381.

█ Finally, there is no merit to defendant's contention that judgment must be entered because plaintiffs' allegedly failed to mitigate damages as a matter of law. The evidence establishes that Nicholas Crivelli submitted a bid in the sum of $330,000 at the bankruptcy proceeding, which represents the contract price in the Scheidmantel buy-sell agreement. The fact that McElwain bid $400,000 in court is not legally dispositive because the law does not require an injured party to incur undue risk, expense or humiliation in an effort to mitigate damages. Plaintiffs presented sufficient evidence that they made a good faith effort to mitigate damages, and the issue was properly submitted to the jury with appropriate instructions.

### III. NEW TRIAL OR REMITTITUR

Defendant contends that a new trial should be granted because (1) the court's interim preliminary instructions misstated the position of General Motors; (2) the court improperly placed time limits on the testimony of an expert witness; (3) the court erroneously excluded the testimony of a witness concerning the application of state law to the facts; (4) the damage award is speculative and against the weight of the evidence; and (5) the damage award is excessive and a remittitur is required. There is no merit to any of these contentions.

█ The court delivered preliminary instructions before the jury panel, prior to opening statements of counsel, and at the close of plaintiffs' case. When plaintiffs rested their case, the court concluded, based on the cross-examination of plaintiffs' witnesses, that defendant was contending, *inter alia*, that Nicholas Crivelli was an unqualified buyer under the Pennsylvania Board of Vehicles Act, the Dealer

Sales and Service Agreement, and the circumstances of this case. One such circumstance was the fact that plaintiffs originally planned to move the franchise to Vanport while GM desired to maintain the franchise in Beaver Falls, and that this intention rendered Crivelli unqualified as a buyer in GM's view.

When defense counsel advised the court after the instruction that GM was not contending that Crivelli was an unqualified buyer, the court correctly and clearly stated defendant's position in its final instructions to the jury, and GM does not contend otherwise. A review of the preliminary and final instructions reveals that defendant was treated fairly, suffered no prejudice and that the error, if any, was harmless and *de minimus.*

■ There is no merit to GM's argument that the court unfairly limited the testimony of James Anderson and improperly excluded the testimony of Ms. Stuski. Anderson appeared as a witness and provided corroborating evidence in support of Hartner, Lati, Melwig and Fisher. In addition, he expressed opinions concerning location, qualifications of candidates, and potential sales and damages. The underlying facts and his opinions were presented to the jury, and defendant suffered no prejudice from the court's effort to keep the defense focused and the trial moving.

■ Ms. Stuski was excluded as a witness because the court concluded that her testimony was irrelevant, unnecessary, confusing, misleading and a waste of time. The issues which she sought to address were presented by other witnesses and argued at length by counsel. We perceive no reason to grant relief on this basis.

■ Finally, there is no merit to defendant's contention that the damage award of $3.5 million is excessive, speculative, and against the weight of the evidence. The damage issue was hotly contested at trial and the parties presented impressive witnesses to support their positions. Plaintiffs presented a well known expert who estimated that the losses sustained ranged from $3.1 to $3.582 million. The opinion was supported by extensive documentary evidence and the projections were within reason. Although GM's witnesses presented a different picture, the verdict is supported by evidence of record, and it is neither shocking nor excessive. The jury resolved a disputed issue of fact, and the parties are not privileged to substitute their views for the findings of the jury, under the circumstances. It follows that a new trial on damages or a remittitur would be an improper exercise of discretion and unfair to the verdict winner.

We have given serious consideration to the remaining contentions of defendant and find them without merit. In addition, many of GM's contentions have been waived or not preserved. The motion of General Motors for judgment as a matter of law, a new trial or remittitur will be denied in a written order to follow.

### ORDER OF COURT

AND NOW, this 20th day of January, 1999,

IT IS ORDERED that the motion of General Motors Corporation for judgment as a matter of law, a new trial or remittitur shall be and hereby is denied.